Go on to the last case, which is Huntington Ingalls Industries versus Eason, and we'll hear from Mr. Walker first. Thank you, Your Honor. May it please the Court. I'm Jonathan Walker from the law firm of Mason, Mason, Walker & Hedrick, and I represent the petitioner in this case, Huntington Ingalls Incorporated. Huntington Ingalls operates the shipyard in Newport News. This case falls under the Longshore Harbor Workers' Compensation Act, which covers maritime workers, many of which are workers of Huntington Ingalls. The facts of the case are relatively undisputed. The claimant in this case was a pipe fitter who had a knee injury in 2008. He went out on temporary total disability compensation for approximately nine months. During that time, he underwent surgery. He was eventually released by his treating physician to return back to his regular duty work. At that point in time, the claimant underwent what is known as a functional capacity evaluation, and his treating physician gave him a rating of 14 percent permanent partial loss of use under the American Medical Association Guides to the Evaluation of Permanent Impairment. Now, that exercise really has no medical relevance. It is relevant for the purposes of workers' compensation. At that point in time, when a doctor decides that a claimant has gotten as good as they can get, that they've reached maximum medical benefit of care, the law decides that from that point in time, if there is a residual impairment, it's going to be permanent in nature. So under the Longshore Act, you have the question of the nature of disability and the extent of disability. And when it's determined that someone is permanently impaired, their disability is considered permanent from that point on. That's called MMI, maximum medical improvement, and it's an aspect of the Longshore Harbor Workers' Compensation Act and pretty much every workers' compensation law that distinguishes temporary disability from permanent disability. Well, is this case this simple? That there are certain circumstances under which a person can get partial disability after receiving a permanent disability, but in this case, he didn't do what was necessary to trigger that, such as seek a modification of his permanent award or make a claim for his left leg. Isn't that the gist of this case? I think it is very simple to the extent that the claimant did not have any additional permanent partial disability. Well, we don't know that. I think what Judge Floyd is saying is this case involves the single injury. He never made a claim that he had a changed condition. He never had a claim for the other leg causing this wage loss. And as a consequence, when it's the single injury, it's a scheduled compensation, and we stick with the schedule. I have to agree with that wholeheartedly. And the director says you've overstated the position a little bit without, because your position basically doesn't allow for some of the exceptions that actually do exist. And it seems to me the director is probably correct on that, too, isn't he? Well, I can't concede that, Your Honor. I think the director and I are in a parallel universe when it comes to this case. There's no question that once someone has compensation under the schedule for the one injury, for the injury that was found, there's no enhancement of the injury, there's no change of this particular injury. And once you get the scheduled benefit for that injury, you can't get more compensation for that injury because it's been scheduled and even though he may suffer more wage loss, unfortunately. You just don't because it's the one injury and there's no claim for changed condition or no claim for a new injury to the left leg. I'll agree with that, Your Honor. And had the judge, what do we call the judge, the trial judge? Administrative law judge. Administrative, ALJ. Had he found as a fact something different and we'd have a different claim altogether. But his finding was that it's just the same injury. Well, that's correct, Your Honor. I think that the actual crucial finding for the purposes of the schedule is that he had achieved maximum medical improvement. Now, to claim it in order to get around the ruling. It was scheduled for permanent disability, too. Yes, Your Honor, under the schedule. And it's unlike the Ninth Circuit. Here, you can't have temporary following the permanent because, number one, it's illogical. Number two, he's already received the maximum for the permanent. That is also my position, Your Honor. All right. I feel very strongly about the fact that you cannot have temporary disability after you've achieved permanency. But it's dangerous to start making overarching propositions or legislative statements from our point of view when you have all these different exceptions that could occur in different factual circumstances. Well, if I may, Your Honor, and I understand it's pretty much an intellectual exercise. You're not trying to snatch something from something and lose the case, are you? No, absolutely not. In fact, I'll stop here. He did appeal the MMI finding. Correct, Your Honor. He appealed that to the Benefits Review Board. The Benefits Review Board actually rejected the appeal, and it was never preserved at the ALJ level or on appeal the second time. So that's a finding of fact that pretty much becomes law of the case. And he'll come up here and argue that you can go in and out of maximum medical improvement, but that would be disingenuous. Well, it's the same condition. You might be able to, right? Well, and if I take that case where someone can argue that I'm no longer permanently impaired but now— but whether you can go and reopen it or you can have a changed condition or some overlay that was not part of the original claim. Yes, Your Honor. You can move under Section 22 of the Act at any time within a year after the compensation order that circumstances have changed, my physical condition has changed. I'm just submitting that to say that my physical condition is completely miraculously cured is going to be a rare case, if at all, that comes before court. In other words, to say I'm no longer at maximum medical improvement, I'm no longer permanently impaired, is pretty much from a practical standpoint not possible. I realize you have not— But that asks the wrong question because the Act compensates on a schedule, and there's only two types of claims where you go and look at the actual wage loss. But in this case, it was a scheduled loss. It was. And there's been no change or alternative claim made to question it. Isn't that really where you stand? That's correct, Your Honor. It's where the Director and I are, again, in parallel universes. That is that— He's not totally happy with what you said in your brief, I think.  He'll speak. But the one thing that is common throughout the cases that the Director and I agree on is that the schedule presumes a future loss of wagering capacity, therefore you can't have it both ways. It is, in fact, double indemnity to take under the schedule and then come back and say I don't want the schedule, I want more. And that's what's going on here. Thank you. Without further questions, I'll go ahead and reserve the rest of my time. Mr. Boyle. Good morning, Your Honor. May it please the Court, Matthew Boyle on behalf of the Director. Based on what the Court has said so far, I think you pretty clearly understand our position in this case, that your position basically was that the position taken by the company was too absolute, didn't allow for all the exceptions that could occur. Correct, Your Honor. Under the given facts of this case, that there's a permanent partial disability and that the impairment rating has never changed, temporary partial disability is not permissible in this case, but that PEPCO really doesn't control the outcome of this case. If the Court would like me to elaborate at all, I will. If not, I'll go sit down. That's fine if you're satisfied. Thank you. All right, Mr. Camden. If it may please the Court, I am Gregory Camden from the firm Montagna-Klein Camden, here on behalf of Ricky Eason, the injured worker. Going straight to your question, Judge Niemeyer, about change in condition, there is a Section 922 of the statute for change in condition. It is only applicable when there has been a previous award. In this case, there was no previous award. It was just an open case, so there was no reason to file a change in condition. The medical evidence in this case? My suggestion wasn't necessarily statutory. It seems to me if we accept that what we're addressing is an injury causing 14% permanent disability and that was compensated, then without any change in the nature of the injury or different injury or whatever, the scheduled allowance seems to be what Congress intended to award. And to now say because he in fact had some wage loss beyond that awarded, he should get a temporary permanent award doesn't seem to be allowed. Now that's a proposal to you. I'm not sure whether it's correct. You may have an answer for that. I do, Your Honor. First of all, the permanent partial was not awarded when this case came forward. It was paid by the employer voluntarily. The claimant returned back to work full duty. He worked full duty for a number of months and then he reported to the shipyard clinic on May 17, 2010. This is Appendix 86. Just on that last factual point, are you disputing that he had a permanent partial disability of 14% in this appeal? No, Your Honor. Okay, that's an accepted fact then. It's an accepted fact. And he got paid the full scheduled rate for the 14% permanent partial disability. Do not dispute that, Your Honor. I'm just indicating it was not awarded. It was voluntarily paid by the employer. When he reported to the clinic on May 17th, he complained of locking up of his right knee and felt that the left knee was also causing him pain due to overcompensating. The clinic indicated that they wanted him to return to his orthopedist. He returned to his orthopedist the next day. The orthopedist put him under temporary restrictions and took him out of work for that one day. It should be noted the employer paid him temporary total disability for that one day of May 18th, 2010. The employer at the hearing conceded that if the man was temporary total, he would be entitled to ongoing benefits even though he had been paid the permanent partial disability rating. The employer stipulated at the hearing that he was entitled to temporary total disability for that one day. So for the employer to stand here now before you and say once permanent, always permanent, belies what they indicated to the trial court originally. What did you say he went back for on that one day? He went back for locking of the right knee. You mean to the doctor, to the clinic? Yes. Locking of the right knee and he felt his left knee was causing him problems from overcompensating. He had- Well, could we interpret you're trying to create some kind of a judicial estoppel or some kind of an estoppel by agreeing that they paid him, but could they have paid him in respect to the left leg for that day? They could have paid him in respect to the left leg for that one day. What I'm trying to point out is that the physician gave him injections for the right knee, put him under temporary restrictions for the right knee, submitted forms to the employer for restrictions for the right and left knee, and there is no medical evidence to the contrary that he was under temporary restrictions for both the left and right knee during the time period claim. No medical evidence to the contrary. There is no way for this court to find- See, but you're not- What you're doing, and I think it's- You've got a legitimate criticism of scheduled benefits, but you're sort of suggesting that he, in fact, suffered more wage loss because of his right knee than for which he was compensated. And that really expresses a disagreement with the scheduled compensation, which takes all that into account. Some cases, the worker may not have as much wage loss and may heal totally. He still keeps that full scheduled benefit. In this case, you make a good case that he suffered a greater wage loss than was allowed by the schedule, but aren't we limited by the schedule? No, Your Honor, I'm not making that argument at all. My argument is that temporary partial disability is a completely different benefit than permanent partial disability, and PEPCO addressed the permanent partial disability. Justice Stevens in the PEPCO decision said- It's for the same injury, isn't it? But there are three other categories of disability that you can have. It's a different category. Temporary partial is not permanent partial disability. What's the reason for having the scheduled disability then? If he falls under one of the schedules and gets paid fully, are you suggesting he can also make a claim under the other disability? Certainly. If he is permanent partial and gets a disability rating and then becomes permanently totally disabled, he can pursue permanent- Oh, sure, that's a change. That's a different proposition. That's the Ninth Circuit case. I would ask why that's a different proposition, Your Honor. He was only partially permanent, 14%. If all of a sudden the worker becomes 100% disabled permanently, you have the Ninth Circuit situation. That has not been compensated on the schedule. This man was compensated for 14% of the right leg permanently, and there's no evidence in the case that that changed, that injury, 14% permanent disability, maximum recovery ever changed, and he got the payout. You're suggesting now he should get more money for that particular injury. Your Honor, there is medical evidence that he worsened and then got better again. He was temporarily disabled, not permanently disabled. It's a completely different category of benefits. If you look at 908C- You're suggesting it's a new injury then. No, sir, I'm not suggesting it's a new injury at all. I'm suggesting that it's part of the same injury and that he worsened for a temporary period of time and that the medical evidence is consistent on that fact. There is no medical evidence to the contrary. For the employer to argue to you he's confined to the schedule in this matter, they would have had to have put on medical evidence that he was always at permanency, and they did not do that. The only medical evidence in the record is temporary restrictions were put on for the time period we claimed and that were awarded by the court. That is a factual finding. That cannot be overturned if there is substantial evidence. He had about 14% permanent partial disability and was paid in full, and then within four weeks became totally healed. Would he have to return the money? No, Your Honor, he would not have to because he had already been given permanent partial disability benefits. So your argument is he didn't have to file for a modification of that permanent award. That is correct. He had an ongoing claim going the entire time. There was no previous award that had to be modified. He'd never been in front of the court before. Except he got the maximum that was allowed for that injury under the statute. You don't have to litigate everything. So the company says he's been rated 14% permanent. When you rate somebody 14% permanent, the allowance that Congress gives presumes future wage loss, doesn't it? Yes, Your Honor. And it's a bet, but that's the whole scheme of workers' compensation is always a bet in exchange for a lot of things, and he got that benefit in full. Your Honor, he got permanent partial disability in full under the rating, and I do not dispute that. But you went on to say he got everything he was entitled to. Actually, you said 100% of what he was entitled to. That's not true. As you already indicated, he could go to permanent total disability. You conceded that. That's a change. And this was a change to temporary partial. It was the same injury. That was the finding, and that's what you just conceded. No, I did not, Your Honor. He went from permanent partial disability to temporary partial disability for the same injury. You're saying if for the same injury he went to permanent total, that's okay. What's the difference between permanent total and temporary partial? He'd have to file a change. Would he need to get from 14% to total disability? Wouldn't he have to file something? He would request a hearing, which is what we did in this case. There's no filing of a change in condition because there was no previous award order, Your Honor. Now, let's take a hypothetical then. I mean, I don't think resting on the fact that the company paid what the statute provides relieves. Let's assume there was a finding by the agency of permanent partial, 14%, and awarded payment on the schedule. The guy gets 100% disabled. What would he then do under the statute? If that occurred within one year of the previous award, which for this case there was no previous award, he would have filed a changing addition application under Section 922. But there was no need to file a changing addition application in this case because there had never been an award entered. There now has been an award entered. And if this gentleman became permanently… If you are right about this, then it would encourage companies always to go through the claims process instead of voluntarily paying. The company here said, we accept the rating, 14% permanent, and we accept the scheduled payment, which it's required us to do. We won't require to have an order entered. You're saying because they didn't go and get an award made by the agency, they're now going to be punished for that? Your Honor, actually, this particular employer does require awards on permanent partial disability benefits after they have paid the awards out. They wait until they've paid the entire permanent partial disability, then they set stipulation agreements to the party saying you have to sign these or we're requesting a hearing in front of the judge. They would have done that in this case, except this man came back out of work again before the permanent partial disability benefits were paid in full. So they do already require the stipulations you're talking about. I'd like to point out 908C regarding the permanent partial disability says these benefits are paid in addition to the benefits owed under temporary total and temporary partial disability. They don't say after temporary total and temporary partial. They say in addition to. So these benefits were meant to be paid not instead of temporary partial disability. Under your scenario, Your Honor, if my client is temporary totally disabled and then becomes temporary partially disabled and later permanent partially disabled, he shouldn't have received those temporary partial disability benefits because the permanent partial disability assumed his wage earning capacity loss. That's why the key in this case is that his restrictions were temporary. Permanent partial disability only prevents future wage loss while he is partially disabled. This case, he was temporarily and totally disabled. I'm sorry. Temporarily and partially disabled as the judge found. These holdings are consistent with the case where they found that the gentleman was entitled to additional temporary total after having already been found permanently disabled. And so I'm drawing a blank on the last case. But there's another case cited by the director where the individual was paid temporary total disability after having received permanent partial disability benefits. So I see my time is up. I apologize. But it remains our position that temporary controls the outcome of this case. Thank you. Mr. Walker. Thank you, Your Honor. I have to say, first of all, that the claimant received 40 weeks of compensation on top of his regular wages. He made $1,200 a week. And during 40 of those weeks, he also made an additional $929. You only got that, though, because that's what the schedule requires. That's what the schedule allows. The thing that all of us agree upon is that the schedule presumes a future loss of wage earning capacity. What we don't agree on is whether that future loss of wage earning capacity is only temporary total or temporary partial or permanent total. We all agree the permanent total can be awarded after a permanent partial disability rating ceases. There's no question about that. The argument he's making is a statutory argument that Section 908E would allow compensation in addition to 908E. Is that his argument? That is his argument. That's his argument, that 908E allows additional compensation beyond that compensated under the schedule. That belies the proposition that the schedule is designed to compensate workers for a presumed loss of wage earning capacity and to encourage quick and, in our case, voluntary payment. Keep in mind that the voluntary payment did occur. And whether we would have later on sought an award or not is irrelevant to the fact that we're furthering the purpose of workers' compensation schemes, which is to get quick payment and certain payment to the claimants as soon as possible. So we're following that. The fact that we seek an order later on memorializing payments we've already made really should be irrelevant to the inquiry before the court. But the point of the matter is what seems to get lost in the shuffle here is the concept of maximum medical improvement and the fact that once a worker reaches maximum medical improvement under the act, whether scheduled or unscheduled, they have a permanent impairment and future compensation can be permanent total or it can be permanent partial. Under 821, if it's an unscheduled injury, it would be for loss of wages. Under 81 through 21, it would be under the schedule alone. So the date of MMI controls whether the nature of an injury is permanent or not. After that, the only thing allowed is either partial or total. So a claimant can become permanently and totally disabled after a scheduled injury, but they can't be more permanently partially disabled and they certainly can't be temporary partially disabled and permanently partially disabled at the same time, which is what the argument was in this case. All right. We'll adjourn court for today and come down and greet counsel and conference. And I understand Judge Hamilton will be conferencing with you over a conference call then, right? Very well. Yep. This honorable court stands adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Henry F. Floyd, Clyde H. Hamilton